**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMRA PLASTIC AND RECONSTRUCTIVE SURGERY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTHCARE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 25-6001 (MAS) (JTQ) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant UnitedHealthcare Insurance Company's ("Defendant") Motion to Dismiss (ECF No. 9) Plaintiffs Samra Plastic and Reconstructive Surgery ("Samra") and Patient A.M.'s ("Patient" and collectively with Samra, "Plaintiffs") Complaint (ECF No. 1-1). Plaintiffs opposed (ECF No. 15)[1], and Defendant replied (ECF No. 17). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted in part and denied in part.

---

[1] The Court notes that Plaintiffs initially filed their opposition brief, with exhibits, as ECF No. 14. The Clerk of Court, however, directed Plaintiffs to refile their opposition because they failed to use the proper electronic signature. Plaintiffs refiled their opposition containing the proper electronic signature as ECF No. 15. The Court, therefore, considers and cites to ECF No. 15 as Plaintiffs' opposition.

## I. BACKGROUND

### A. Factual Background[2]

Samra is a New Jersey based healthcare services provider. (Compl. ¶¶ 1, 4, ECF No. 1-1.) Defendant is a corporation headquartered in Minnesota (*id.* ¶ 3), providing health insurance benefits to individuals, including Patient, who was treated by Samra, "a non-participating or out-of-network provider that rendered medically-necessary surgery to . . . Patient" (*id.* ¶¶ 2-3, 10).

Patient, who has a history of breast cancer, previously underwent a mastectomy of the left breast with placement of prepectoral tissue expanders in December 2019. (*Id.* ¶¶ 11, 17.) In determining payment for the first surgery conducted in December 2019, on April 19, 2020, Defendant "explained to Plaintiffs that the out-of-network benefit to be paid by Defendant was the FAIRHealth Benchmark at the 75th percentile" (the "FH75"). (*Id.* ¶ 18.) Patient subsequently required a second phase of her breast reconstruction; namely, "medically necessary services including: [(1)] partial capsulectomy of the left breast capsule [;] and [(2)] insertion of [an] implant for left breast reconstruction" (the "Surgical Procedure"). (*Id.* ¶¶ 12, 17.)

Prior to the Surgical Procedure, Samra, "as part of [its] normal business practice," contacted Defendant to request prior authorization of the planned phase-two surgery. (*Id.* ¶¶ 14, 17.) On November 10, 2020, a representative of Defendant approved two Current Procedural Technology[3] ("CPT") codes associated with the Surgical Procedure and issued a pre-authorization, agreeing to pay for the services to be provided to the Patient at FH75. (*Id.* ¶¶15-16, 19, 21.)

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] A CPT code is a "number that identifies and describes the services performed by [a] medical provider in accordance with a systematic listing published by the American Medical Association." *Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *2 (D.N.J. July 31, 2009).

On November 11, 2020, Dr. Fares Samra ("Dr. Samra"), a Board-Certified Plastic Surgeon "employed and/or contracted by [Samra,]" performed the Surgical Procedure. (*Id.* ¶¶ 12, 13.) Samra sent a bill to Defendant totaling to $51,600.00 in costs, which "were consistent with the FH75 benchmark." (*Id.* ¶¶ 23-24.) Defendant only paid $5,311.03 toward the charges, leaving Patient with an outstanding balance due on this bill of $46,288.97. (*Id.* ¶ 25.)

### B. Procedural Background

Plaintiffs initially brought this case in the Superior Court of New Jersey, Monmouth County, and Defendant removed the case to this Court. (ECF No. 1.) The Complaint includes six counts: (1) breach of contract ("Count One"); (2) promissory estoppel ("Count Two"); (3) account stated ("Count Three"); (4) failure to make all payments pursuant to a member's plan under 29 U.S.C. § 1132(a)(1)(B); (5) breach of fiduciary duty and co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a); and (6) failure to provide a summary plan description in accordance with 29 U.S.C. § 1102 and 29 U.S.C. § 1132(c) ("Count Six").[4] (Compl. ¶¶ 27-74.)

Defendant moves to dismiss the Complaint in its entirety for four reasons: (1) the factual allegations supporting the purported contract are refuted by the authorization letter on which the action is predicated (the "Pre-Authorization Correspondence"); (2) the state law claims (Counts One through Three) are expressly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); (3) the state law claims (Counts One through Three) otherwise fail to state a

---

[4] Samra asserts the state law causes of action (Counts One through Three) and Patient asserts the ERISA-based causes of action (Counts Four through Six). (*See generally* Compl.; *see also* Pls.' Opp'n Br. 5, ECF No. 15 ("The Complaint filed by Plaintiffs alleges viable state law causes of action on behalf of Samra for: (1) Breach of Contract; (2) Promissory Estoppel; and (3) Account Stated. Patient, who is insured by Defendant, also alleges certain claims under ERISA.").)

claim upon which relief can be granted; and (4) the ERISA claims (Counts Four through Six) fail to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br., ECF No. 9-1.)

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

The Court finds that: (1) Samra's state law claims are not preempted by ERISA; (2) Samra sufficiently pleads its state law claims; and (3) Patient fails to sufficiently plead her ERISA claims. The Court addresses each finding in turn.

#### A.   The Pre-Authorization Correspondence

As a preliminary matter, the Court briefly addresses the parties' disagreement on the Pre-Authorization Correspondence that Plaintiffs reference in their Complaint. (*See* Compl. ¶¶ 15, 16, 22.) Defendant asks the Court to consider the Pre-Authorization Correspondence which Defendant attaches to its motion. (*See* Def.'s Moving Br. 10-12; Ex. 2 to Decl. of M. Fairley, ECF No. 9-4.) Plaintiffs challenge the veracity of the Pre-Authorization Correspondence[6] and argue that a factual dispute exists concerning the relationship between the Pre-Authorization Correspondence and the purported contract at issue. (*See* Pls.' Opp'n Br. 5-6.) Plaintiffs specifically argue that "[g]iven that the [Surgical Procedure] at issue [was] performed on November 11, 2020, it is nonsensical that Defendant would take the position that the letter dated November 10, 2020, apparently mailed to Plaintiffs, could have possibly been received by Plaintiffs before the [Surgical Procedure] took place the very next day." (*Id.* at 5-6.) Rather, Plaintiffs allege the relevant correspondence is the April 19, 2020, correspondence that Defendant "specifically omitted." (*Id.* at 6; Compl. ¶ 18.)

---

[6] Plaintiffs argue that "[i]n its desperation to avoid liability, Defendant provide[d] a *purported copy* of the Plan Documents and a letter, dated November 10, 2020, which Defendant baselessly asserts is the authorization referenced in the Complaint." (Pls.' Opp'n Br. 5 (emphasis added).)

On a Rule 12(b)(6) motion, the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Because the Pre-Authorization Correspondence presents a factual dispute that cannot be decided at the motion to dismiss stage and Plaintiffs appear to challenge the authenticity of the Pre-Authorization Correspondence, the Court will not consider this document. *See, e.g.*, *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. 17-2055, 2018 WL 2441768, at *6 (D.N.J. May 21, 2018) (finding consideration of materials proffered by defendants "not proper at [the motion to dismiss stage] because [p]laintiff raises factual disputes as to whether [the attached material] is the contract that underlies [the] breach of contract claim"); *Guidotti*, 716 F.3d at 772; *see also Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail."). Having addressed this preliminary dispute, the Court turns to Samra's state law claims and ERISA preemption.

### B.     Samra's State Law Claims (Counts One Through Three)

Defendant argues that the state law claims should be dismissed because they are preempted by ERISA, or in the alternative, Samra fails to state a claim upon which relief can be granted. (*See* Def.'s Moving Br. 12-27.) The Court addresses each argument below.

#### *1.     ERISA Preemption*

Defendant first argues that Counts One through Three must be dismissed because the claims are subject to express preemption under § 514 of ERISA. (Def.'s Moving Br. 2-3, 12-19.) Specifically, Defendant argues that the state law claims "relate to" Patient's ERISA-governed plan

(the "Plan") because "the Complaint makes reference to Samra's efforts to obtain coverage from the Patient's Plan." (*Id.* at 14.) Samra opposes, arguing that the Third Circuit's decision in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.*, 967 F.3d 218 (3d Cir. 2020) is controlling, and that the facts here are on "all-fours" with that case. (*See* Pls.' Opp'n Br. 9-14.)

The stated goal of ERISA is "'to promote the interests of employees and their beneficiaries in employee benefit plans' by ensuring benefit plans [are] well managed and [will] not leave plan participants short-changed." *Plastic Surgery Ctr., P.A*, 967 F.3d at 225 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted [S]ection 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* at 226 (third and fourth alterations in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption provision applies not only to state statutes and regulations which "relate to" an ERISA-governed employee benefit plan, but also to state "common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)).

The Supreme Court has recognized that, for purposes of express preemption, "a state law 'relates to' an employee benefit plan if it has either (1) a 'reference to' or (2) a 'connection with' that plan[.]" *Id.* (quoting *Shaw*, 463 U.S. at 96-97). Claims that make "reference to" an ERISA plan include both claims that "'act[] immediately and exclusively upon ERISA plans'" and those that are "premised on" a plan. *Id.* at 230 (alternation in original) (first quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); and then quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Claims have a "connection with" an ERISA plan if they: "[(1)] 'directly affect the relationship among the traditional ERISA entities—the employer, the plan and its

7

fiduciaries, and the participants and beneficiaries'[; (2)] interfere with plan administration[;] or [(3)] undercut ERISA's stated purpose[.]" *Id.* at 235 (internal citations omitted).

Like the claims in *Plastic Surgery Center*, Samra's claims here

> arose precisely because there was no coverage under the plan[] for services performed by an out-of-network provider like [Samra]. . . . Thus, absent a separate agreement between [Samra and Defendant], there was no obligation for [Plaintiff] to provide services to the plan participants, no obligation for [Defendant] to pay [Samra] for its services, and no agreement that compensation would be limited to benefits covered under the plan.

*Id.* at 231.

Defendant asserts that *Plastic Surgery Center* is distinguishable because in that case, "the plaintiff out-of-network provider[] alleged that it entered into an *oral agreement* with health insurer, Aetna, whereby Aetna agreed to pay the claims *for the services at issue* at a 'reasonable amount' and at the []highest in-network level, which agreement was contemporaneously documented in writing." (Def.'s Reply Br. 4, ECF No. 17 (emphasis in original) (quoting *Plastic Surgery Ctr.*, 967 F.3d at 224).) Defendant further argues, relying on the documents attached to its motion, that here "[Samra] does not allege that [Defendant] made an oral offer or promise regarding payment, instead, [Plaintiffs] argue that the promise to [Samra] was in the form of [a] letter to the Patient . . . [and] the letter concerns a representation related to benefits available *under the ERISA Plan*[.]"[7] (*Id.* (emphasis in original).)

It is not clear from the Complaint, however, that evaluating Samra's state law claims will involve anything more than "'a cursory examination of the plan' [which] is 'not the sort of

---

[7] As previously discussed, the Court will not consider the documents Defendant attaches to its motion because they present a dispute of fact and Plaintiffs have questioned their authenticity. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d at 772; *Plastic Surgery Ctr.*, 2018 WL 2441768, at *6; *Doe*, 30 F.4th at 342.

exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.'" *Plastic Surgery Ctr.*, 967 F.3d at 233 (citation omitted); *see also Premier Orthopaedic Assocs. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492-93 (D.N.J. 2023) (declining to find preemption at the motion to dismiss stage where "nothing in the [c]omplaint directs th[e] Court to consider the patient's healthcare benefit plan"); *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *4 (D.N.J. Jan. 12, 2022) ("The patients' plan agreements thus are not the source of the rights that [plaintiff] seeks to enforce here. . . . There is nothing in the [a]mended [c]omplaint to suggest that [plaintiff] agreed to incorporate the terms of [defendant's] agreements *with patients*[.]" (emphasis in original)).

Patient's Plan is, furthermore, not a "critical factor in establishing liability." *Plastic Surgery Ctr.*, 967 F.3d at 230 (citation omitted). Rather, the Complaint alleges that Defendant separately "agreed for the services [for the Surgical Procedure] provided to the Patient at FH75." (Compl. ¶ 19.) Samra specifically pleads that: (1) "a contract has been created through Defendant['s] course of conduct and interaction with [Samra]" (*id.* ¶ 28); and (2) Defendant agreed to pay FH75 for the Surgical Procedure, as identified by the CPT Codes associated with the Surgical Procedure (*id.* ¶¶ 15, 22, 29-30). *See Plastic Surgery Ctr.*, 967 F.3d at 231; *see also Kindred Hosps. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, No. 21-10659, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases) ("The Third Circuit, as well as other courts, has consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim.").

For the foregoing reasons, the Court declines to find at this stage that Samra's state law claims, as alleged, require impermissible reference to Patient's ERISA-governed Plan.[8] As such, Samra's state law claims are not expressly preempted by § 514. The Court now evaluates whether Samra sufficiently alleges its three state law causes of action.

### 2. *Breach of Contract (Count One)*

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms"; (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

In this case, Samra has adequately alleged facts for each element of its breach of contract claim by alleging that: (1) a contract was created through "Defendant[']s] course of conduct and interaction with [Samra]" whereby Defendant agreed to pay FH75 for the Surgical Procedure and the parties engaged in communications related to such promise on April 19, 2020, and November 10, 2020 (Compl. ¶¶ 16, 18-19, 28, 30); (2) Dr. Samra, a surgeon who is "employed and/or contracted by [Samra]" performed the Surgical Procedure (*id.* ¶¶ 12-13, 29); (3) Defendant only paid $5,311.03, even though the FH75 bill for the Surgical Procedure totaled to $51,600.00 in costs, which were "consistent with the FH75 benchmark" and were "reasonable charges" (*id.*

---

[8] Samra's state law claims also lack a connection with an ERISA plan. "State laws have a 'connection with' ERISA plans if they 'govern, or interfere with the uniformity of, plan administration,' or if the 'acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers[.]" *Plastic Surgery Ctr.*, 967 F.3d at 235 (citations omitted). Because Samra is an out-of-network provider (*see* Compl. ¶ 10), its state law claims "arise out of a relationship ERISA did not intend to govern" and, therefore, do not have an impermissible connection to Patient's ERISA-governed plan. *See Plastic Surgery Ctr.*, 967 F.3d at 236.

10

¶¶ 23-25); and (4) "[Samra] has suffered significant damages as a result of Defendant's failure to pay the agreed upon value for the services" and has suffered at least $46,288.97, plus interest, costs, and attorneys' fees (*id.* ¶¶ 32-33). *See Goldfarb*, 245 A.3d at 577.

Defendant argues that the Complaint fails to adequately allege a contract (express or implied) containing certain terms, emphasizing that Samra fails to establish that the parties "agreed on the essential terms of the purported agreement or that [Defendant] made a 'clear and definite promise.'" (Def.'s Moving Br. 21, 25.) The Court finds, however, that Samra's reference to multiple communications, the FH75 benchmark, alleged to be "reasonable," and certain CPT Codes for the Surgical Procedure associated with FH75 are sufficient to allege a contract with sufficiently certain terms. (*See* Compl. ¶¶ 12-13, 16, 18-19, 23-25, 28-30, 32-33); *see, e.g., Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) ("An agreement lacking definiteness of price, however, is not unenforceable if the parties specify a practicable method by which they can determine the amount." (citation omitted)); *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018) (finding that plaintiff who billed "'normal and reasonable charges' for the provided services according to customary practice . . . [was] entitled to discovery to demonstrate how the parties would have understood or measured the price term in their alleged agreement"). In any event, and as the New Jersey Supreme Court has held, "the precise terms of [an] obligation are factual matters better fleshed out in discovery." *Gotham City Orthopedics*, 2022 WL 111061, at *5 (citation omitted).

The Court, in viewing the allegations in the light most favorable to Samra as it must at this stage, *see Phillips*, 515 F.3d at 228, finds that Samra adequately pleads a breach of contract claim.

Defendant's Motion to Dismiss Count One is, accordingly, denied.

### 3. *Promissory Estoppel (Count Two)*

Under New Jersey law, a claim of promissory estoppel "is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). Similar to its argument for Samra's breach of contract claim, Defendant challenges the first element of Samra's promissory estoppel claim—that there was a clear and definite promise. (Def.'s Moving Br. 20-25.)

The Court finds that Defendant's promise is sufficiently clear and definite to state a claim of promissory estoppel. Here, Samra alleges that Defendant promised it would pay the FH75 rate for the Surgical Procedure. (*See* Compl. ¶¶ 16, 17, 22.) Samra specifically alleges that Defendant authorized certain CPT codes for the Surgical Procedure and had communicated that payment would be at the FH75 benchmark, based on communications that occurred on April 19, 2020, and November 10, 2020. (*Id.* ¶¶ 16, 18, 22, 35.) Samra did not allege that the promise was subject to change upon any conditions, and the CPT codes were agreed upon. (*See id.* ¶¶ 15-19); *cf. Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 569, 574, 576 (D.N.J. 2002) (finding an agreement indefinite because it explicitly stated that it was "subject to change at any time"). At any rate, "in considering whether a promise was clear and definite for a promissory estoppel claim, New Jersey courts 'have tended to relax strict adherence . . .' in favor of a more equitable approach." *United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2022 WL 2760023, at *4 (D.N.J. July 14, 2022) (quoting *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1325-27 (N.J. Super. Ct. App. Div. 1998)).

The Court also finds that Samra has adequately alleged the remaining three elements of a promissory estoppel claim, namely that: (1) Samra reached out to Defendant to obtain some type of approval prior, specifically seeking Defendant's representations before performing the Surgical Procedure (*see* Compl. ¶¶ 14-19, 22); (2) Samra relied on Defendant's promise in performing the Surgical Procedure (*see id.* ¶¶ 20, 21, 36); and (3) Samra's reliance was to its detriment, as it "suffered significant damages" (*see id.* ¶¶ 36-37). As such, the allegations, viewing them most favorably to Samra, *see Phillips*, 515 F.3d at 228, are sufficient to state a promissory estoppel claim.

The Court, accordingly, denies Defendant's Motion to Dismiss Count Two.

### 4. *Account Stated (Count Three)*

Samra's final state law claim rests on "the somewhat arcane [doctrine] known as an account stated[.]" 2 *Corbin on Contracts* § 7.19. An account stated claim "is essentially a species of contract claim[.]" *Accounteks.Net, Inc. v. CKR Law, LLP*, No. A-1067-20, 2023 WL 3331802, at *8 (N.J. App. Div. May 9, 2023) (citation omitted). To set forth such a claim, a plaintiff must adequately allege: (1) "the existence of a debt from a transaction or series of transactions memorialized in such a statement"; (2) "mutual agreement between the debtor and creditor as to the correctness of its amount"; and (3) "a promise by the debtor to pay that sum." *Id.* (citing *Adolph Hirsch & Co. v. James C. Malone, Inc.*, 123 A. 888, 889 (N.J. 1924)). "A debtor's assent to the amount may either be express or implied by a failure to object within a reasonable time, and [its] promise to pay may likewise be either express or implied." *Id.* (citation omitted). "A debtor's partial payment of an invoice may also constitute an implied admission of indebtedness for the balance." *Bergen Plastic Surgery v. Aetna Life Ins. Co.*, No. 22-227, 2022 WL 4115701, at *3 (D.N.J. Sep. 9, 2022) (citations omitted).

13

Here, Samra alleges that it sent its bill to Defendant for "a total of $51,600.00" and that Defendant "acknowledged receipt of the bill[,]" but only paid $5,311.03. (Compl. ¶¶ 23, 25, 40-41.) Since Samra: (1) has properly alleged partial payment and the balance owed by Defendant; and (2) Defendant does not dispute receiving the bill, Samra has properly alleged a claim for account stated. *See Kissmer Milling Co. v. Snow Joe, LLC*, No. 22-5903, 2023 WL 8432846, at *4 (D.N.J. Dec. 5, 2023) (noting that for an account stated claim, "the critical issue is whether [plaintiff] has sufficiently alleged an exact and definite balance" and that defendant's "receipt of . . . invoices alone may be enough to support an account stated claim" where defendant did not deny receipt of the invoices). Moreover, as this Court already found that Samra properly pleads its breach of contract and promissory estoppel claims, it follows that Samra has also properly alleged a claim for account stated.[9] *See E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018) ("[I]n pleading adequately the breach of contract and promissory estoppel claims, it follows that the parties' conduct may show mutual agreement as to the exact and definite amount [defendant] owes [p]laintiff. Accordingly, [p]laintiff has pleaded plausibly its account stated claim." (citation omitted)); *see also Comprehensive Spine*, 2018 WL 6445593, at *6 ("Having concluded that [p]laintiff sufficiently alleges breach of an implied contract, the Court likewise finds that [p]laintiff's account stated claim survives [de]fendants' motion to dismiss." (citation omitted)); *Manley Toys, Ltd. v. Toys R Us, Inc.*,

---

[9] This Court notes that Samra cannot collect on both its breach of contract and quasi-contractual theories. *See Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *28 (D.N.J. June 27, 2019) ("An express contract is a bar to [a] promissory estoppel . . . claim[] under New Jersey law[.]"). "[P]leading in the alternative is permissible[,]" however, at this stage. *Prestige Cap. Fin. LLC v. CVS Pharm., Inc.*, No. 22-735, 2022 WL 17850261, at *6 (D.N.J. Dec. 22, 2022) (citing Fed. R. Civ. P. 8(d)).

No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013) (declining dismissal because the account stated claim was "inseparable from [plaintiff's] breach of contract claim").

The Court, accordingly, denies Defendant's Motion to Dismiss Count Three.

### C. Patient's ERISA-Governed Claims (Counts Four through Six)

Having ruled on Samra's state law claims, the Court next turns to Patient's ERISA-based claims (Counts Four through Six). Defendant argues that Patient has failed to state an ERISA claim upon which relief can be granted. (*See* Def.'s Moving Br. 27-35.) The Court addresses each claim below.

#### 1. *Failure to Make All Payments Pursuant to Member's Plan under 29 U.S.C. § 1132(a)(1)(B) (Count Four)*

In Count Four, Patient alleges a cause of action under 29 U.S.C. § 1132(a)(1)(B) for Defendant's alleged failure to make payments pursuant to Patient's Plan. (*See* Compl. ¶¶ 44-54.) ERISA § 502(a)(1)(B) provides that: "[a] civil action may be brought . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under [S]ection 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is, . . . she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (citing 29 U.S.C. § 1132(a)(1)(B)). "Additionally, the plaintiff must identify the plan provision that entitles her . . . to the specific reimbursement [she is] seeking." *Palazzi v. Cigna Health & Life Ins. Co.*, No. 23-6278, 2024 WL 3361615, at *5 (D.N.J. July 8, 2024) (citing *Metro. Neurosurgery v. Aetna Life Ins. Co.*, No. 22-83, 2023 WL 5274611, at *3-4 (D.N.J. Aug. 16, 2023)).

Here, Patient alleges that: (1) "Patient is entitled to recover benefits due under any applicable ERISA Plan and Policy" (Compl. ¶ 49); (2) "Defendant has failed to make payment

pursuant to the controlling Plan or Policy" (*id.* ¶ 50); and (3) "Defendant['s] decision to pay only $5,311.03 of the FH75 value, as Defendant purports the Plan allowd [*sic*], was wrongful" (*id.* ¶ 51). As Defendant notes, however, Patient "do[es] not point to any plan provision requiring [Defendant] to pay [the] provider's billed charges (*i.e.*, the $51,600.00) in full or the $46,288.97 that [Patient] claim[s] to remain outstanding." (Def.'s Moving Br. 28.) Because Patient fails to allege a specific Plan term that provides for payment of such fees, Patient's claim must be dismissed. *See Metro. Neurosurgery*, 2023 WL 5274611, at *4 (finding allegations of "conclusory terms that [plaintiff] has been underpaid and . . . a disparity between the amount [plaintiff] billed and the amount of [d]efendants' reimbursement" not sufficient to state a claim for relief under § 502(a)(1)(B)); *Prestige Inst. for Plastic Surgery, P.C. v. Keystone Healthplan E.*, No. 20-496, 2020 WL 7022668, at *7 (D.N.J. Nov. 30, 2020) ("It is the [p]laintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits." (quoting *Univ. Spine Ctr. v. Anthem Blue Cross of Cal.*, No. 19-12639, 2020 WL 814181, at *5 (D.N.J. Feb. 18, 2020))); *Gotham City Orthopedics, LLC v. Aetna Inc.*, No. 20-19634, 2021 WL 9667963, at *9 (D.N.J. Sep. 10, 2021) ("[Plaintiff] must point to the specific plan provisions that, in its view, plausibly entitle it to a greater sum of money" to survive a motion to dismiss.).

The Court, accordingly, grants Defendant's Motion to Dismiss Count Four.

### 2. *Breach of Fiduciary Duty and Co-Fiduciary Duty Under 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a) (Count Five)*

In Count Five, Patient alleges a cause of action under 29 U.S.C. § 1132(a)(3) for breach of fiduciary and co-fiduciary duties pursuant to 29 U.S.C. §§ 1104(a)(1) and 1105(a). (*See* Compl. ¶¶ 55-64.) "ERISA imposes fiduciary duties of prudence and loyalty on plan fiduciaries" and co-fiduciaries. *Peterson v. Ins. Servs. Office, Inc.*, No. 20-13223, 2021 WL 1382168, at *3 (D.N.J.

Apr. 13, 2021) (citing 29 U.S.C. § 1104(a)(1)). "To assert a claim for breach of fiduciary duty under ERISA, [p]laintiffs must allege that: '(1) a plan fiduciary (2) breach[ed] an ERISA-imposed duty (3) causing a loss to the plan.'" *Id.* (quoting *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012)). "[A] direct action for breach of fiduciary duty exists in the 'other appropriate equitable relief' clause of ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B)." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 225 (3d Cir. 2009); *see also Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, No. 15-8590, 2016 WL 4499551, at *9 (D.N.J. Aug. 25, 2016) (noting that "Section 502(a)(3) of ERISA[ is] the vehicle for [p]laintiff's fiduciary duty claim" (citing *Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996))).

ERISA § 502(a)(3) serves as a "catchall" provision, which "offer[s] appropriate *equitable relief* for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512 (emphasis added). Specifically, § 502(a)(3)(B) "authorizes an ERISA participant, beneficiary, or fiduciary [to:] . . . obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x 197, 200 (2014) (quoting 29 U.S.C. § 1132(a)(3)). "[T]he Supreme Court has defined other appropriate equitable relief' to mean only those categories of relief that were *typically* available in equity." (emphasis in original) (quotation marks omitted) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). "Almost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for money damages and may not be brought under § 502(a)(3)." *Id.* (first alteration in original) (internal quotation marks and citation omitted).

Here, in alleging breach of fiduciary and co-fiduciary duties, Patient alleges damages "in [an] amount to be determined at trial, but not less than $46,288.97, plus interest, costs, and

attorneys' fees." (Compl. ¶ 64.) Patient does not otherwise allege any equitable relief she seeks. (*See generally id.*) As Defendant articulates, "[the] relief [Patient seeks] is clearly legal relief as it is a sum of money, and it is accordingly not available under ERISA § 502(a)(3)." (Def.'s Moving Br. 32); *see also In re Aetna UCR Litig.*, No. 07-3541, 2015 WL 3970168, at *16 (D.N.J. June 30, 2015) (dismissing claim brought under § 502(a)(3) where plaintiffs could not "identify with any degree of specificity what equitable relief they want[ed]" and therefore, plaintiffs could not avoid dismissal "merely by labelling their claim for unpaid benefits as one for prospective, equitable relief").

The Court, accordingly, grants Defendant's Motion to Dismiss Count Five.

   3. ***Failure to Provide a Summary Plan Description in Accordance with 29 U.S.C. §§ 1022 and 1132(c) (Count Six)***

Patient's last cause of action alleges a failure to provide a summary plan description pursuant to 29 U.S.C. §§ 1022 and 1132(c). (*See* Compl. ¶¶ 65-74.) Here, Patient alleges that "the employee benefit plan is not written in a manner calculated to be understood by the average plan participant" and, therefore, the Plan fails to comply with the requirements set forth in 29 U.S.C. § 1022. (*Id.* ¶¶ 70-71.) Patient further alleges that "Defendant also failed to provide a copy of the Plan documents when initially requested on behalf of the [Patient] on June 3, 2021[,]" and therefore, Defendant is liable to Patient under 29 U.S.C. § 1132(c)(1)(B). (*Id.* ¶¶ 72-73.)

"Section 102 of ERISA requires [the] plan administrator to furnish a summary plan description of any employee benefit plan to participants and beneficiaries" and Section 102(b) details the specific requirements of that summary plan description. *Engers & AT&T*, 428 F. Supp. 2d 213, 232-33 (D.N.J. 2006) (citing 29 U.S.C. §§ 1022(a) and 1022(b)).

Under 29 U.S.C. § 1132(c)(1)(B),

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this

> subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal[.]

29 U.S.C. § 1132(c)(1)(B). To state a claim under this Section, a plaintiff must allege that: "(1) [s]he is a plan participant or beneficiary; (2) [s]he made a request for information required by ERISA's disclosure requirements; and (3) the plan administrator failed to provide the requested documents." *Justman v. Accenture LLP*, No. 24-4107, 2024 WL 4631646, at *7 (E.D. Pa. Oct. 30, 2024) (citing 29 U.S.C. § 1132(c)(1)(B)).

Notably, "[n]othing in the language of either ERISA § 102 or its accompanying regulation . . . indicates that it provides a cause of action." *Shah v. Blue Cross Blue Shield of Tex.*, No. 16-8803, 2018 WL 1293164, at *6 (D.N.J. Mar. 13, 2018). Further, Patient does not allege that Defendant is an administrator,[10] an element of a claim under § 1132(c)(1)(B).[11] *See* 29 U.S.C. § 1132(c)(1)(B); *Justman*, 2024 WL 4631646, at *7 (noting requirements for a claim under 29 U.S.C. § 1132(c)(1)(B)).

The Court, accordingly, grants Defendant's Motion to Dismiss Count Six.

---

[10] Under 29 U.S.C. § 1002(16), an "administrator" is defined to mean: "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) . . . such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16).

[11] The Court need not reach the other arguments Defendant made in favor of dismissing Count Six.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 2/2/26

MICHAEL A. SHIPP  
UNITED STATES DISTRICT JUDGE